Joseph **KUSHNER** and Charlotte **Kushner**, his wife, Plaintiffs,

v.

**HENDON CONSTRUCTION, INC.**, Defendant.

Civ. No. 78–38.

United States District Court, M. D. Pennsylvania.

Jan. 8, 1979.

Daniel G. Flannery, Rosenn, Jenkins & Greenwald, Wilkes-Barre, Pa., for plaintiffs.

George A. Spohrer, Wilkes-Barre, Pa., for defendant Hendon Const., Inc.

Barry L. Mack, Lake Ariel, Pa., Thomas P. Kennedy, Scranton, Pa., for third party defendant Raymond Naholnik.

Anthony J. Piazza, Jr., Scranton, Pa., for third party defendant Joseph Lorenzetti.

## OPINION

MUIR, District Judge.

The Plaintiffs, Joseph Kushner and Charlotte Kushner, residents of New York, filed this action against Hendon Construction,

Inc. a Pennsylvania corporation, seeking damages for injuries suffered by Mr. Kushner when he fell from the first floor to the basement of his vacation home in Wayne County, Pennsylvania, on April 1, 1977. The issue of liability was tried to a jury from September 8 to September 11, 1978 and on September 11, 1978, the jury returned answers to special verdict questions finding that the Defendant was not liable to the Kushners. A judgment in favor of the Defendant was entered on September 12, 1978. On September 18, 1978, the Kushners filed a motion for a new trial and filed a brief in support thereof on November 13, 1978. The Defendant filed a responsive brief on November 27, 1978. As of the date of this Order, no reply brief has been filed.

 The Kushners raise eight grounds in support of their motion for a new trial. They contend that the verdict is against the evidence, against the weight of the evidence, against the law, and against the charge of the Court, that the Court erred in bifurcating the case, that the Court erred in charging the jury with respect to the elements which had to be proved by the Plaintiffs in order for the jury to find in their favor, that the Court erred in refusing to charge the jury that the Defendant had a duty to exercise reasonable care to protect Kushner against the danger created by its actions, and that the Court erred in submitting the case to the jury by way of special verdict questions. Of those eight grounds, only four are set forth in the "Questions presented" section of the Plaintiffs' brief. Because the Kushners did not mention in their brief their contention that the verdict was against the evidence, against the law, against the charge of the Court, or their contention that the Court erred in refusing to charge the jury that Hendon Construction had a duty to exercise reasonable care to protect Mr. Kushner from the danger created by its action, the Court will consider those grounds to have been waived. Additionally, so far as the Court is able to determine, the Kushners did not brief the question of whether the Court erred in submitting the case to the jury on special verdict questions with the exception of their objec-

tion to question No. 2 and whether the verdict was against the weight of the evidence. Therefore, those grounds will also be deemed to be withdrawn. As an alternative basis of its holding, however, the Court will deal with those two grounds on their merits.

Before considering the issues raised by the Plaintiffs' motion for a new trial, the Court will give a short factual background of this case. Joseph and Charlotte Kushner owned a vacation home in Wayne County, Pennsylvania, which they customarily occupied on weekends. The basement of the home was unfinished and on January 30, 1977 the Kushners contracted with Hendon Construction, Inc. for the finishing of the basement. Hendon began construction on the basement in March of 1977 and, as contemplated by the parties, began to place a new floor in the basement. The result of constructing a new floor was to raise the height of the floor by a considerable distance so that the riser at the bottom step was substantially shorter than the other risers. In order to correct this problem, on March 29, 1977 Hendon removed the stairs and staircase with the intent of constructing a new stairway which would contain risers of equal height between the steps. However, because of the unexpected unavailability of lumber for that type of construction, a new set of stairs was not built prior to the Kushners' next visit to their home. Hendon did not advise the Kushners of the fact that the stairs had been removed nor did it place any warning signs or barricades at or near the staircase. On April 1, 1977, at approximately 9:00 P.M., well after dark, the Kushners arrived at the vacation home. Mr. Kushner entered the house, turned on the living room light, and proceeded to the door leading to the basement in order to turn on the main water supply. The light from the living room did not illuminate the entrance way to the cellar. Mr. Kushner opened the door to the cellar steps, felt that the light switch was in the "up" position, and stepped into the darkness without attempting to illuminate the stairwell and without feeling with his foot to see

if the first step was there. The light was also controlled by a switch in the basement. The injuries which he suffered as a result of the fall are those which gave rise to this action.

At the pre-trial conference held in Scranton, Pennsylvania, on September 1, 1978, the Court directed that the case be bifurcated between liability and damages. Following the conclusion of evidence in the liability phase, the Court charged the jury substantially in conformance with Restatement of Torts 2d § 343 which describes the duty owed by an occupier of premises to invitees. That charge conformed to the trial brief of the Plaintiffs which contended that Hendon Construction, Inc. as an independent contractor was under the same duty with respect to the Kushners' vacation home as the Kushners would have been to other invitees. The case was submitted to the jury by way of special verdict questions which followed the Court's charge and which also contained proximate cause questions relating to the issue of the Defendant's liability, two questions relating to whether Mr. Kushner was contributorily negligent and whether such negligence was a proximate cause of his injury, and a comparative negligence question as required by Pennsylvania law. The jury found no liability on the part of the Defendant, determined that Mr. Kushner was contributorily negligent, and found that such negligence was a proximate cause of his injuries. On the basis of that verdict, judgment was entered in favor of the Defendant.

█ The Kushners first contend that the Court erred in charging the jury with respect to the elements which the Kushners had to prove in order to impose liability on Hendon. Restatement of Torts, 2d, § 343, which has been adopted by the Pennsylvania courts, *see Palenscer v. Michael J. Bobb, Inc.*, 439 Pa. 101, 266 A.2d 478 (1970), sets forth the conditions on which liability of a possessor of land to invitees may be found. A possessor of land is subject to liability for physical harm caused by a condition on the land only if he (1) knows or should have known of the condition and should realize

that it involves an unreasonable risk of harm to invitees, (2) should expect that the invitees will not discover or realize the danger or will fail to protect themselves against it, and (3) fails to exercise reasonable care to protect them against the danger. The Court covered section 343 in the charge with the exception of the second clause of § 343(b) which relates to a reasonable expectation on the part of the possessor that invitees would fail to protect themselves against the danger created by some condition on the land. Counsel for the Kushners specifically excepted to the Court's failure to charge in connection with Restatement 2d § 343(b), citing the case of *Bowman v. Fretts & Leeper Construction Co.*, 227 Pa. Super. 347, 322 A.2d 719 (1974).

█ It is the view of the Court that no error was committed by the Court's decision not to charge the jury that Hendon could be held liable either if it should have expected that Mr. Kushner would not discover or realize the danger presented by the removal of the cellar steps or would fail to protect himself against that danger. The reason for the Court's omission of the second clause of § 343(b) was that the evidence in the case indicated that the accident occurred as a result of Mr. Kushner's failure to discover the danger. In such a case, there was no question concerning whether he was in a position to protect himself from the danger created by the absence of the cellar steps. The evidence is undisputed that he was unaware that the cellar steps had been removed. A person cannot protect or fail to protect himself against a danger of which he is not aware. In *Bowman v. Fretts & Leeper Construction Co.*, 227 Pa.Super. 347, 322 A.2d 719 (1974), the Superior Court indicated its approval of a charge making specific reference to the second clause of § 343(b). That case, however, involved a substantially different factual situation. The Plaintiff suffered injuries when he fell through a hole in the second floor of a firehouse through which a pole for descending to the first floor had previously run. The Plaintiff lived and ate on the second floor and he and other fire-

men who were bothered by dust which came through the hole as a result of construction on the lower part of the building had covered the hole with rugs or cardboard in order to minimize the effect of the dust. The Plaintiff testified in the case that he was aware of the hole and the makeshift arrangement used to cover it. Consequently, in that case, because the first part of § 343(b) had been satisfied in that the invitee had discovered and had realized the danger presented by the condition, liability could be imposed on the Defendant only if it should have expected that a person in the position of the Plaintiff would fail to protect himself against the danger. Because the danger was not known to Mr. Kushner and the accident did not result from his failure to protect himself against such a danger, there was no need for the Court to charge the jury in conformance with the second clause of § 343(b) and the Plaintiff was not prejudiced as a result of such omission. Had the testimony at trial indicated that Mr. Kushner had discovered the absence of the cellar steps and had thereafter failed to take steps to protect himself from the danger of falling from the first floor into the cellar, then the Court would have charged as requested by the Plaintiff.

The Plaintiffs contended in their brief for a new trial that the Court erred in submitting the case to the jury by way of special verdict questions. In support of this contention, the only argument advanced by the Kushners in their brief is that special verdict question No. 2, like the charge, omitted to submit to the jury the question of whether Hendon should have realized that a person in Mr. Kushner's condition might fail to protect himself against the danger created by the removal of the cellar steps. Because there was no error in omitting that portion of § 343 from the charge, there was correspondingly no error in also omitting it from the special verdict question. Special verdict question No. 2, tracked exactly the Court's charge and the Court is convinced that it fairly represented one of the facts which the Kushners had to prove in order to establish that Hendon was negligent.

It may be, however, that the Kushners believed that the Court erred in deciding to submit this case to the jury by way of special verdict questions or that it erred in the manner in which such submission was made. As indicated above, because these arguments have not been briefed, the Court has deemed them to be waived. However, it is the view of the Court that there was no error either in the decision to submit the case to the jury by way of special verdict questions or in the manner in which such questions were framed and submitted.

■ A trial court has wide discretion in determining whether to submit a case to a jury by special verdict questions under F.R. Civ.P. 49(a) and determining their form. *See Envirex, Inc. v. Ecological Recovery Associates*, 454 F.Supp. 1329, 1339 (M.D.Pa. 1978). Such questions are normally helpful to the jury in clarifying the specific issues to be determined by them and the jury's answers to specific questions are often helpful to appellate courts in the consideration of issues on appeal. *See Cramer v. Hoffman*, 390 F.2d 19, 23 (2d Cir. 1968). They also have the little-recognized favorable attribute of insulating trial error. The Court is of the view that the questions submitted to the jury in this case did cover all essential facts fairly presented by the evidence and were sufficiently clear so as to permit the jury to concentrate its attention on the facts necessary for either party to win a judgment. The Defendant argues in his brief that any objection to the special verdict questions and specifically special verdict question No. 2 was waived by the Kushners because their counsel did not submit any proposed special verdict questions nor did he specifically except to the wording of special verdict question No. 2 when it was submitted to the jury. The Defendant seems to suggest that special verdict questions should be treated similarly to points for charge so that prior submission or specific exception is required in order to preserve any objection to the questions. *See, e. g.,* F.R.Civ.P. 51, which states that a party may file written requests that the Court instruct the jury on the law as set forth in the requests, requires the Court to

inform counsel of its proposed action prior to their arguments to the jury, and provides that no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict.

This Court is of the view that such a procedure would be the most logical way to handle objections to special verdict questions. There is not as yet a requirement in this Circuit that the Court disclose its charge to counsel prior to their closing arguments and assuming that the questions together with their instructions are part of the charge there is no reason to treat them in a different manner. Moreover, this Court's practice order issued in this case invited counsel to file proposed special verdict questions. Counsel for the Kushners did not elect to submit any such proposals, and the Court, were it writing on a clean slate, would adopt the position of the Defendant insofar as it argues that the failure to submit a proposed special verdict question or to except specifically to the Court's questions constitutes a waiver of any objection to the questions. However, the law in this circuit is apparently not in conformance with the Defendant's suggestion. In *Smith v. Danyo*, 585 F.2d 83 (3d Cir. 1978), the Court of Appeals stated that although F.R. Civ.P. 49(a) relating to special verdict questions must be read together with Rule 51, there apparently is no obligation that counsel submit proposed special verdict questions in order to have the benefit of disclosure of the content of the Court's questions prior to their closing arguments. Although such a rule does not appear to be in keeping with the scheme relating to points for charge set forth in F.R.Civ.P. 51, this Court is bound to follow the law in this Circuit. It has been this Court's recent experience that as much as a day of trial time per case can be spent simply in framing appropriate special verdict questions and eliciting the views of counsel about those questions prior to their closing arguments. However, the Plaintiffs here have not alleged specifically that the Court erred in failing to disclose the content of the special verdict questions to counsel prior to their closing arguments nor have they alleged that any prejudice

resulted from the Court's failure to disclose the contents of the special verdict questions to the Kushners' counsel prior to his closing argument. Such a showing of prejudice is necessary or the error is harmless and in this case because the questions bore such a similarity to the Plaintiffs' trial brief, counsel's closing argument was not materially harmed. *See Smith v. Danyo*, 585 F.2d 83 (3d Cir. 1978). Therefore, nothing with respect to the special verdict questions constituted error in this case which would require the granting of a new trial.

The Kushners contend that the Court erred in bifurcating this case between liability and damages. In support of that contention, they cite the case of *Lis v. Robert Packer Hospital*, 579 F.2d 819 (3d Cir. 1978), which indicated that this trial court could not adopt a practice of bifurcating every negligence case because such a practice was not an exercise of discretion as contemplated by F.R.Civ.P. 42(b). That rule states that the Court, in furtherance of convenience or to avoid prejudice or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim or of any separate issue. Ordinarily, the decision of whether or not to bifurcate a case is firmly within the discretion of the trial court. *See In Re Master Key Antitrust Litigation*, 528 F.2d 5, 14 (2d Cir. 1975). The procedure selected should be conducive to expedition and economy, however. *See Warner v. Rossignol*, 513 F.2d 678, 684 (1st Cir. 1975). The only additional requirement set forth in the *Lis* case is that the Court resolve the issue of bifurcation on a case-by-case basis and use its informed discretion in determining whether or not to bifurcate. It seems to me that if a District Judge may in his discretion bifurcate negligence cases, it is a non-sequitur to hold that he may not bifurcate all negligence cases as a matter of policy. However, the Court of Appeals has spoken on this issue and I will follow the law. Parenthetically, I would expect that in 15 years or less the law on this point will be changed. Bifurcation will become the rule and failure to bifurcate the exception.

In this case, the question of whether or not the case should be bifurcated was

raised *sua sponte* by the Court at the pre-trial conference. Counsel for the Defendant indicated that he had no objection to such bifurcation. The Kushners' counsel objected to the procedure, arguing that the case was not complicated, that the trial would not be unduly long, and that the testimony on the damage aspect had been taken by means of the deposition. After consideration of the Plaintiffs' arguments, the Court bifurcated the trial based upon its view that in this case, the damage testimony was unrelated to the liability testimony so that bifurcation had the potential of shortening the trial, and that because of such separation of testimony it would be preferable to have the jury concentrate on the issue of liability without being aware of the damage figures involved so that no prejudice would result to the Defendant from the jury's consideration of the nature and severity of Mr. Kushner's injuries along with its determination of whether or not Hendon was responsible for the accident. It is the view of the Court that the decision to bifurcate was a correct one and did in fact result in a shorter trial because as a result of the jury's finding of no liability, no court and jury time was expended in considering the question of damages and because the jury was able to consider the question of liability without knowing how extensively Mr. Kushner was injured. Further, the Court took into consideration those factors set forth in Rule 42(b) and listened to the statements of counsel for both sides before making its decision. Such procedure is clearly the use of informed discretion as contemplated in *Lis v. Robert Packer Hospital*, 579 F.2d 819 (3d Cir. 1978) and no error was committed by the Court's decision to bifurcate.

Finally, the Kushners raise as a ground for a new trial the contention that the jury's verdict was against the weight of the evidence. Again, that issue has not been briefed and the Court deems it to have been withdrawn. Even so, the Court is convinced that there was sufficient evidence to support the jury's finding that the Defendant was not negligent. Basically, the jury concluded that a reasonable person

in Hendon's position should not have expected that anyone using the Kushners' home would attempt to descend into the basement in almost total darkness. Such a determination is exclusively within the province of the jury. The Court does not believe that the jury's verdict was capricious or contrary to the evidence and it does not go against this Court's judicial conscience to let the verdict stand. *See Clingerman v. Everett Cash Mutual Fire Ins. Co.*, 124 Pa.Super. 89, 188 A. 93 (1936); *Redevelopment Authority v. United Novelty & Premium Co.*, 11 Pa.Cmwlth. 216, 314 A.2d 553 (1973).

Based upon the foregoing, the Court will enter an order denying the Plaintiffs' motion for a new trial.