Koval v. Koval

*Jennifer P. Bierly,* for plaintiff.
*Ronald S. McGlaughlin,* for defendant.

LUNSFORD, *J.,* October 15, 2009—Presently before this court is defendant, Donita R. Koval's (Wife) motion for summary judgment. Defendant is seeking that summary judgment be entered against plaintiff Steven E. Koval (Husband) on his petition to vacate decree in divorce and incorporated postnuptial agreement or, in the alternative, enter partial summary judgment and hold that Husband has no right to any portion of the severance agreement benefits payable to Wife. For the following reasons Wife's motion for summary judgment is hereby denied.

## BACKGROUND

On March 22, 2006, the complaint in divorce including counts for custody, equitable distribution of marital property, alimony, alimony pendente lite and counsel fees and costs was filed. On August 28, 2007, the decree in divorce was entered which incorporated the terms of the postnuptial agreement dated August 28, 2007. On February 28, 2008, Husband filed a petition to vacate the decree in divorce and the incorporated postnuptial agreement. On March 12, 2009, Wife filed an answer denying the averments contained in the petition and asserted new matter to which Husband filed a response. On July 15, 2008, Wife filed a motion for summary judgment and brief in support. Husband filed a brief in opposition to the motion for summary judgment. On May 12, 2009

and September 14, 2009, this court heard argument on the motion for summary judgment. Depositions of the parties, Husband's former attorney, Claire Kimmel, Esquire, and Daniel Warfel, former chief financial officer, executive vice-president and a member of the Merger Committee of Omega Bank were taken and originals filed with the court.

The basis for the petition to vacate the decree in divorce and the incorporated postnuptial agreement is a claim for intentional misrepresentation. Husband vigorously argues he had continuously requested information throughout the negotiations with Wife regarding the sale of the bank and a potential severance agreement available to Wife if the bank would be sold. At the parties' final settlement meeting on August 28, 2007, Husband contends that he asked Wife if there were any negotiations which would give rise to the sale of the bank. Tr. dep. of Steven E. Koval, 5/14/2008, p. 54. According to Husband's memory and notes he took at the meeting, Wife responded that the "bank will not be sold for many years in her opinion." Tr. dep. of Steven E. Koval, 5/14/2008, p. 94. Following the meeting on August 28, 2007, a postnuptial agreement was executed in which Husband waived, released and relinquished any interest he may have had in Wife's severance agreement in return for the insertion of paragraph 12(J) into the postnuptial agreement. "[i]n the event of a negotiated termination of Wife's employment with Omega Bank, N.A., whereby Husband received no benefit from Omega Bank National Association Salary Continuation Plan, Husband shall be entitled to receive 75 percent of any cash benefits payable

to Wife in excess of the amount that Wife would normally be entitled to receive pursuant to the terms of her current severance agreement." On November 9, 2007, Omega announced in a form K-8 filed under the Securities Act of 1933 that it signed a definitive agreement to merge with FNB Corporation, with FNB being the surviving entity.

Wife argues summary judgment should be granted for the following reasons:

(1) Husband cannot establish the elements of intentional misrepresentation;

(2) The alleged fraud is intrinsic in nature and is therefore time-barred;

(3) The severance agreement was post-separation and not a marital asset; and,

(4) Husband is precluded by contract law from receiving proceeds from the severance agreement.

This court will address these arguments in turn.

## DISCUSSION

Under the Pennsylvania Rules of Civil Procedure, Rule 1035.2,

"[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action

or defense which could be established by additional discovery or expert report, or

"(2) if, after completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Blackman v. Federal Realty Investment Trust,* 444 Pa. Super. 411, 415, 664 A.2d 139, 141 (1995). The court may grant summary judgment only where, examining the record in the light most favorable to the non-moving party, the moving party's right to it is clear and free from doubt. *Id.* at 415, 664 A.2d at 141-42.

## I. *Whether Husband Established a Prima Facie Case for Intentional Misrepresentation*

Wife argues Husband cannot establish that she made a misrepresentation because her statement that the bank would not be sold for many years was merely an opinion. She further argues Husband fails to establish the other necessary elements of a claim for intentional misrepresentation.

In order to prevail on a claim for intentional misrepresentation the following elements must be proven: (1) a representation; (2) which was material to the transac-

tion at issue; (3) made falsely, with knowledge of its falsity or recklessness as to whether it was true; (4) with the intent to mislead another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) resulting injury which was proximately caused by reliance. *Bortz v. Noon,* 556 Pa. 489, 498, 729 A.2d 555, 560 (1999). In reviewing the facts in the light most favorable to Husband, he has established a prima facie case for misrepresentation.

Wife relies on *Warren Savings Bank & Trust Co. v. Foley,* 294 Pa. 176, 144 A. 84 (1928), in support of her argument that mere statements of opinion cannot amount to misrepresentations. However, in *Foley,* the Pennsylvania Supreme Court provided that opinions can be the basis for an action when it is shown that the statement was made with the intention for the other to act upon it to his injury and when the person making the statement of opinion knew it was false or consciously ignored the truth. *Id.* at 182, 144 A. at 86. Therefore, *Foley* is not dispositive. Wife also relies on *Klerlein v. Werner,* 307 Pa. 16, 160 A. 710 (1932), in support of her argument that statements of opinion do not amount to misrepresentation sufficient to justify the opening of a judgment. However, this court does not find *Klerlein* instructive because the *Klerlein* court was examining representations under the Sales Act, 69 P.S. §121. The court provided:

"The statements forming the basis of appellant's action are expressions of opinions or estimates. They are not such statements as would ground an action of deceit. Section 12 of the Sales Act [69 P.S. §121] provides: 'No [affirmation] of the value of the goods, nor any statement

purporting to be a statement of the seller's opinion only, shall be construed as a warranty.' A mere false assertion of value when no warranty is intended is not grounds for relief, because the assertion is a matter of opinion. *Especially is this true where the one supposed to rely on such statement has an equal opportunity to ascertain the facts on which such opinion might be based. Rockafellow v. Baker,* 41 Pa. 319, 80 Am. Dec. 624; *Geddes' Appeal,* 80 Pa. 442; *Rothermel v. Phillips,* 292 Pa. 371, 377, 141 A. 241 (1928)." *Id.* at 22, 160 A. at 720. (emphasis added)

The court explained that expressions of opinion are not the basis for relief especially *when the parties have equal opportunity to ascertain facts upon which the opinion is based. Id.* In the present matter, Husband argues he did not have an equal opportunity to ascertain the facts upon which the opinion was based because Wife, as CEO, had superior knowledge and information.

Regarding the additional elements necessary in an action for intentional misrepresentation, this court determines Husband has sufficiently pled facts to establish a prima facie case for intentional misrepresentation. Wife's statement that the bank would not be sold for a number of years, as testified to by Husband and Claire Kimmel, Esquire, is clearly material to the transaction at hand as the parties had discussed the severance agreement on multiple occasions during negotiations. Husband and Claire Kimmel, Esquire both testified that the issue of the bank being sold repeatedly came up during the negotiations. Husband also testified that he consistently considered the severance contract to be a marital asset.

Husband has pled sufficient facts regarding Wife's knowledge that the statement was false or her recklessness as to whether the statement was true. On August 27, 2007, one day prior to the August 28, 2007 settlement conference, Wife believed there was a 70 percent chance the bank would be sold. Wife also knew that on August 8, 2007, the executive committee of the bank's board of directors, of which Wife is a member, held a meeting to discuss strategic alternatives. Wife was also a member of the Merger Committee appointed on August 27, 2007 to negotiate with potential acquirers. At the August 27, 2007 meeting, the board of directors authorized KBW to represent the bank in obtaining expressions of interest from potential acquirers. Daniel Warfel who was employed as the bank's chief financial officer, believed there was a "three out of four" chance the bank would sale after the August 27, 2007 meeting. These facts, if true, are sufficient to establish that Wife was at least reckless as to the truth of her statement that the bank would not be sold for many years.

Husband argues Wife made the statement with the intent to mislead him into giving up the fight over the severance agreement. The above facts if true, would show Wife intentionally withheld information regarding the sale of the bank to mislead Husband in order for him to give up his claims to the severance agreement. See *Eigen v. Textron Lycoming Reciprocating Engine Division,* 874 A.2d 1179 (Pa. Super. 2005). Husband further argues he was justified in relying on the statement under *Porreco v. Porreco,* 571 Pa. 61, 811 A.2d 566 (2002). Under *Porrecco,* whether reliance on an alleged misrepresentation

is justified depends on whether the recipient knew or should have known that the information supplied was false, for purposes of determining whether the agreement can be voided based on a fraudulent misrepresentation. Where the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon. *Id.* at 70, 811 A.2d at 571. In the present matter, Wife as CEO, member of the board of directors and member of the Merger Committee of the bank clearly had superior knowledge of whether the bank would be sold.

Husband contends he has been injured in waiving his right to his claim to Wife's severance agreement and to submit the issue of whether the severance agreement was marital property to the court. Husband also argues that he waived his right to obtain a greater percentage of the marital estate based on the factors enumerated in the Divorce Code at 23 Pa.C.S. §3502(a)(3), (5), (6), (8) and (10). This court agrees with Husband, even if the severance agreement is not a marital asset, the value of the severance agreement attributable to Wife as her separate asset would potentially have had an impact on the distribution of the marital estate. Therefore, because a prima facie case of intentional misrepresentation has been established, Wife's motion for summary judgment is denied.

## II. *Whether the Alleged Fraud Is Intrinsic or Extrinsic in Nature*

Wife argues the alleged fraud is intrinsic in nature and therefore time-barred because an action based on intrin-

sic fraud must be filed within 30 days. Wife cites *Ratarsky v. Ratarsky,* 383 Pa. Super. 445, 557 A.2d 23 (1989), in support of her argument. In *Ratarsky,* wife filed a motion to open the divorce decree pursuant to 23 Pa.S.A. §602, alleging husband had perpetrated extrinsic fraud by concealing the cash surrender value of the insurance policies and thereby precluded a fair settlement. *Id.* at 448, 557 A.2d at 24. The court noted, "by the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy." *Id.* at 450, 557 A.2d at 26. "Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by judgment, unless . . . a showing that the jurisdiction of the court has been imposed upon, or that some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial." *Id.* at 451, 557 A.2d at 26. The court in *Ratarsky* determined the husband's actions did not amount to extrinsic fraud and did not prevent a fair hearing. *Id.* at 451, 557 A.2d at 26. The court reasoned that counsel for wife conducted year-long negotiations and if counsel wanted to know the value of the policies, all he needed to do was go to the bank and review the policies. *Id.* The court instructed wife should have specifically inquired concerning the cash surrender value. *Id.* at 26, 557 A.2d at 452. The Superior Court held the trial court abused its discretion in forcing husband to pay for the oversight of wife's counsel and because the agreement was clear and entered after extensive negotiations, it must stand. *Id.* at 27, 557 A.2d at 453.

The facts of the present matter are dissimilar to *Ratarsky* because, in the matter sub judice, Husband did specifically inquire whether the bank would be sold. There was no failure on the part of Husband's attorney to investigate the value of assets which information was readily available to both parties as in *Ratarsky*. This court determines the alleged fraud is such that it would have prevented a fair submission of the controversy, the severance agreement, to the court. The alleged fraud does not relate to matters such as perjury or false testimony, *i.e.,* matters adjudicated by judgment. Therefore, because the alleged fraud is not intrinsic and therefore time-barred, Wife's motion for summary judgment is denied.

### III. *Whether the Severance Agreement Is a Marital Asset*

This court agrees with Husband, whether Wife's severance agreement is a marital asset is not an issue before this court in addressing the present motion for summary judgment and therefore will not be considered.

### IV. *Whether the April 11, 2007 Settlement Agreement Is a Valid Contract*

This court agrees with Husband, the integration clause of the postnuptial agreement dated August 28, 2007 at paragraph 25 provides the August 28, 2007 postnuptial agreement superseded any prior agreement reached by the parties. Therefore, whether the April 11, 2007 settlement agreement is a valid contract is not properly an issue before this court in considering Wife's motion for

summary judgment and therefore will not be addressed.

Accordingly, the following order is entered:

## ORDER

And now, October 15, 2009, upon consideration of defendant, Donita R. Koval's motion for summary judgment and the briefs and arguments of the parties, the motion for summary judgment is hereby denied.